Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 31 2014, 9:55 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**GREGORY GREEN**
Michigan City, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GREGORY GREEN, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1311-PC-610 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven Eichholtz, Judge
Cause No. 49G20-0005-PC-87246

**October 31, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Gregory Green ("Green") appeals pro se the Marion Superior Court's denial of his petition for post-conviction relief and raises two issues, which we restate as:

I. Whether Green received ineffective assistance of trial counsel; and,

II. Whether the post-conviction court erred when the court refused Green's request to subpoena his trial counsel to testify at the post-conviction hearing.

We affirm.

## Facts and Procedural History

In 2000, Green was charged with Class A felony dealing in heroin, Class C felony possession of heroin, and Class D felony possession of cocaine. Law enforcement officials found the heroin and cocaine as the result of a traffic stop. Prior to trial, Green moved to suppress the evidence found during the traffic stop and search of Green's vehicle. The trial court denied the motion and Green filed an interlocutory appeal.

Our court affirmed the trial court's denial of Green's motion to suppress. Our court recounted the following facts concerning the traffic stop:

> At approximately 11:45 p.m. on May 5, 1999, Officer Craig Wildauer ("Wildauer") of the Indianapolis Police Department saw a blue Oldsmobile with no visible license plate traveling southbound on Interstate 65 at a high rate of speed. Wildauer activated the emergency lights on his marked police car and initiated a traffic stop. When Wildauer approached the driver's side of the Oldsmobile, he saw a paper license plate on the rear side window and observed Green leaning toward the passenger-side front seat with his hands on a fast-food bag. Green turned to Wildauer and "looked startled." Wildauer asked Green for his driver's license and registration. Green, who "appeared nervous," told Wildauer that the Oldsmobile was a rental and shakily handed him an Illinois identification card and rental paperwork. Wildauer asked Green to exit the Oldsmobile and stand at the front of the police car.
> Wildauer relayed Green's information over the radio for a computer check of his driving and warrant status. Wildauer asked Green where he was going. Green replied that he was going to Montgomery, Alabama, to

retrieve some paperwork from his brother and then return to Chicago. Wildauer noticed that Green "began sweating on his forehead and face," "grasp[ed] his hands," "had a lot of rapid eye movement," and began "pacing back and front [sic], a lot of nervous tendencies." Wildauer asked Green if he had been arrested before. Green responded that he was on parole for homicide in Illinois. The check of Green's identification confirmed this statement and indicated that he had a valid driver's license. Wildauer returned Green's identification and rental paperwork and "told him he was free to go."

After Green had taken "three (3) to five (5) steps" away, Wildauer asked if he "had a minute" and whether he could ask Green "a few questions." Green said "yes" and walked back toward Wildauer. Wildauer queried Green about the nature of his trip and asked why his brother "didn't just fed ex the packet, the paperwork to him." Green stared silently at Wildauer. Wildauer then asked Green "if there [were] any weapons in the vehicle, any large sums of money, [and] if there [were] any narcotics in the vehicle," specifically "marijuana, cocaine, heroin, and methamphetamine." Green answered "no" to all these questions but broke eye contact with Wildauer and looked at the ground when responding to the question about heroin. Wildauer asked if there was any stolen property in the Oldsmobile. Green answered "no." Wildauer then asked if he could search the Oldsmobile. Green responded "yes."

Wildauer asked Green to stand at the front bumper of the police car and asked Officer John Arvin ("Arvin"), who was riding with Wildauer, to watch Green. Wildauer began searching the front seat of the Oldsmobile, where he had initially seen Green reaching toward the fast-food bag. Green approached the Oldsmobile, and Wildauer told him to return to the police car's bumper. Wildauer resumed his search and felt a "hard rock like substance" in the fast-food bag, at which point Green again approached the Oldsmobile. Wildauer told Green to resume his position at the front of the police car and again instructed Arvin to watch Green. Before Wildauer could return to the front seat of the Oldsmobile, Green "walked up on [him] again." Wildauer told Green to place his hands on the police car and started to conduct a patdown search when Green "raised his right hand at [him] in an aggressive manner and became physical with [him]." Wildauer handcuffed Green and told Arvin to complete the patdown search.

Wildauer retrieved his "narcotics K-9 dog" from the police car and led him to the Oldsmobile. The dog "made a positive indication for the odor of narcotics on the passenger side door." Wildauer then searched the Oldsmobile and found pellets of what was later determined to be heroin in the fast-food bag. Wildauer placed Green under arrest. A small amount of cocaine was later found in a folded piece of paper in Green's wallet.

3

Green v. State, No. 49A02-0109-CR-620, Slip op. at 2-4 (Ind. Ct. App. June 14, 2002) (footnote and record citations omitted).

Green's appellate counsel for the interlocutory appeal, who also served as his trial counsel, argued that Green's continued detention after the reason for the traffic stop had dissipated was unreasonable under Article I, Section 11 of the Indiana Constitution and rendered his consent to search involuntary. Id. at 5. Green also argued that the search of his vehicle was unreasonable under the Fourth Amendment because the officer lacked sufficient articulable facts to suggest that Green was involved in criminal activity before he began the search. We held that Green had waived both issues on appeal because he failed to cite any authority for his assertion that he was detained by the officer after he was told he was free to leave, and therefore, our court affirmed the trial court's judgment. Id. at 7-8.

In January 2003, Green was tried *in absentia*, and the jury found him guilty on all charges. Green was eventually arrested in Alabama on May 27, 2006, and returned to Indiana. His sentencing hearing was held on August 9, 2006. The trial court considered Green's criminal history as an aggravating circumstance, and he was ordered to serve consecutive terms of forty-five years for Class A felony dealing in heroin and two years for Class D felony possession of cocaine.

Green appealed his conviction and sentence. While preparing the record on appeal, the court reporter discovered that the recording equipment had malfunctioned and the transcript of the sentencing hearing was not available. Therefore, Green's trial counsel and the prosecuting attorney prepared a verified statement of the evidence as allowed by

Indiana Appellate Rule 31. The trial court adopted the prosecutor's statement but added its own recollection. Green's conviction and sentence were affirmed by our court on September 13, 2007. See Green v. State, 873 N.E.2d 208, No. 49A02-0610-CR-951 (Ind. Ct. App. Sept. 13, 2007).

In that appeal, our court rejected Green's claim that the trial court abused its discretion when it denied his request for a continuance and proceeded to try him *in absentia*. In a footnote, we also observed that Green's argument that the trial court should not have ordered his enhanced sentences to be served consecutive was not supported by statute or caselaw. Id. at 1.

On October 7, 2008, Green filed a pro se petition for post-conviction relief. The petition was amended on December 17, 2012. In the original and amended petitions, Green argued that his trial counsel was ineffective for: 1) failing to adequately argue that the vehicle search violated Article I, Section 13 of the Indiana Constitution and the Fourth Amendment of the United States Constitution, and 2) failing to notify Green that the trial court's recording equipment had malfunctioned during his sentencing hearing and failing to allow Green to assist in the preparation of the statement of the evidence. He also argued that his appellate counsel was ineffective for failing to interview Green while counsel was preparing the appeal to discuss what Green and his witnesses testified to at the sentencing hearing.

A hearing was held on Green's post-conviction petitions on September 6, 2013. Prior to the hearing, Green requested a subpoena to order his trial counsel to appear at the hearing. His request was denied. Therefore, at the hearing, only Green and his appellate

5

counsel testified. On October 18, 2013, the post-conviction court issued its findings of facts and conclusions thereon, denying Green's petition for post conviction relief. Green now appeals.

**Standard of Review**

Post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. McCary v. State, 761 N.E.2d 389, 391 (Ind. 2002). Rather, post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. Davidson v. State, 763 N.E.2d 441, 443 (Ind. 2002). A post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. Henley v. State, 881 N.E.2d 639, 643 (Ind. 2008). On appeal from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Id. To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Id. at 643-44.

Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we cannot affirm the judgment on any legal basis, but rather, must determine if the court's findings are sufficient to support its judgment. Graham v. State, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), aff'd on reh'g, 947 N.E.2d 962. Although we do not defer to the post-conviction court's legal conclusions, we review the post-conviction court's factual findings under a clearly erroneous standard. Id. Accordingly, we will not reweigh the evidence or judge

6

the credibility of witnesses, and we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. Id.

### I. Ineffective Assistance of Trial Counsel

Green argues that the post-conviction court clearly erred when it rejected his claim of ineffective assistance of trial counsel. Our supreme court summarized the law regarding claims of ineffective assistance of trial counsel in Timberlake v. State as follows:

> A defendant claiming a violation of the right to effective assistance of counsel must establish the two components set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. The Strickland Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. The two prongs of the Strickland test are separate and independent inquiries. Thus, [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.

753 N.E.2d 591, 603 (Ind. 2001) (citations and quotations omitted).

In his petitions for post-conviction relief, Green argued that his trial counsel was ineffective for 1) failing to adequately argue that the vehicle search violated Article I, Section 13 of the Indiana Constitution and the Fourth Amendment of the United States Constitution, and 2) failing to notify Green that the trial court's recording equipment had malfunctioned during his sentencing hearing and failing to allow Green to assist in the preparation of the statement of the evidence.

A. *The Vehicle Search*

Prior to his trial, Green's trial counsel filed a motion to suppress the evidence obtained during the search of Green's vehicle. Officer Wildauer testified that Green consented to the search of his vehicle, and Green did not testify at the suppression hearing. In his memorandum of law in support of his petition for post-conviction relief, Green claimed that trial counsel was ineffective for failing to argue that Officer Wildauer's inquiry concerning whether Green had any narcotics in the vehicle was unreasonable under Article I, Section 11 of the Indiana Constitution.

Specifically, Green noted Officer Wildauer's testimony that he received consent to search the vehicle and self-servingly stated that he denied giving his consent. Green then argued:

> [H]owever, **it is not the voluntariness of Green's consent that is the issue, it is the inquiry about drugs, which preceded the consent, that's unreasonable and unconstitutional under Article 1, Section 11**.

Appellant's App. p. 104 (emphasis in original).

8

In his petition, Green also claimed that his counsel should have argued that the officer lacked articulable facts to give rise to reasonable suspicion of illegal activity that would justify his further detention under the Fourth Amendment. Green argued that his "consent to the search was the product of an unlawful detention," and therefore, "'the consent was tainted by the illegality and was ineffective to justify the search.'" Id. at 112 (quoting Royer v. Florida, 460 U.S. 419, 507-08 (1983)).

But at the hearing on his original and amended petitions for post-conviction relief, for the first time, Green argued that trial counsel prevented him from testifying at the suppression hearing, and that he would have testified that he did not consent to the officer's search of his vehicle. In this appeal, Green similarly abandons the arguments he raised in his petitions for post-conviction relief and focuses on his claim that he did not consent to the search. Because Green's claim that trial counsel was ineffective for failing to present his testimony at the suppression hearing was not raised in his petitions for post-conviction relief, his claim is waived.[1] See Allen v. State, 748 N.E.2d 1158, 1171 (Ind. 2001); Ind. Post-Conviction Rule 1(8) ("All grounds for relief available to a petitioner under this rule must be raised in his original petition.").

B. *Sentencing Hearing and Statement of the Evidence*

In his amended petition for post-conviction relief, Green also argued that his trial counsel was ineffective for failing to notify him that his sentencing hearing was not recorded due to an equipment malfunction and for failing to allow him to assist in

---

[1] From the post-conviction record, we may reasonably infer that Green had a conversation with his trial counsel concerning his proposed testimony at the hearing on the motion to suppress, but counsel advised Green not to testify. See tr. p. 36.

9

preparing the Appellate Rule 31 Statement of the Evidence.[2]  Specifically, Green claimed

that he was denied the "right to be heard" due to trial counsel's ineffectiveness.  See

Appellant's App. p. 124.

Green correctly observes that a criminal defendant has a right to be present at all

critical stages of trial and sentencing.  See Brown v. State, 839 N.E.2d 255, 227 (Ind. Ct.

App. 2005), trans. denied; Adams v. State, 693 N.E.2d 107, 109 (Ind. Ct. App. 1998).

However, Green was present at his sentencing hearing.  And Green has not cited any

authority holding that preparation of a Statement of the Evidence is a critical stage of a

sentencing proceeding.  Green also claims that because he was not asked to participate in

recreating the record, his appellate counsel did not have a complete copy of the record;

therefore, counsel was unable to effectively challenge his sentence.

Pursuant to Appellate Rule 31,[3] the trial court adopted the State's statement of the

evidence, but with the following additional recollections:

> 1. The Court found that the defendant's prior criminal history was an
> aggravating factor; particularly his prior Murder conviction and to a lesser
> degree his prior Resisting Law Enforcement conviction.
> 2. The Court found no mitigating factors.
> 3. The Court found that the aggravating factors outweighed the mitigating
> factors and imposed an aggravated sentence of forty-five years.

Ex. Vol., Petitioner's Ex. 6.

---

[2] Green's trial counsel submitted a statement of the evidence to the trial court, and counsel informed the court that she did not have "independent verifiable recollection" of the sentencing hearing.  Appellant's App. pp. 140-43.  For this reason, trial counsel should have allowed Green to participate in preparing his statement of the evidence.

[3] In relevant part, Appellate Rule 31(A) provides: "[I]f no Transcript of all or part of the evidence is available, a party or the party's attorney may prepare a verified statement of the evidence from the best available sources, which may include the party's or the attorney's recollection. The party shall then file a motion to certify the statement of evidence with the trial court or Administrative Agency. The statement of evidence shall be attached to the motion."

At the post-conviction hearing, Green submitted a "Verified Statement of Evidence as per Recollection and Witnessed by Petitioner for Sentencing Hearing on August 9, 2006." See Ex. Vol., Petitioner's Ex. 7. Green's exhibit contains a more detailed recollection of his testimony, his cousin's testimony and Dr. Richard Maye's testimony than the description the State provided of those individuals' testimonies in its own statement of the evidence.

Importantly, the trial court considered all witness testimony before sentencing Green, and the court declined to find any mitigating circumstances. It is well-settled that

> The finding of mitigating factors is within the discretion of the trial court. It is true that a trial court is not obligated to weigh or credit the mitigating factors in the manner a defendant suggests they should be weighed or credited. However, when a trial court fails to find a mitigator that the record clearly supports, a reasonable belief arises that the mitigator was improperly overlooked.

Cotto v. State, 829 N.E.2d 520. 525 (Ind. 2005) (internal citations omitted).

Green does not argue that the evidence that his trial counsel failed to include in the statement of the evidence supports any specific mitigating circumstances that the trial court improperly overlooked. Moreover, our review of Green's Exhibit 7 does not lead us to conclude that the trial court abused its discretion when it sentenced Green. Therefore, although trial counsel could have consulted with Green during preparation of the Appellate Rule 31 Statement of the Evidence, Green has not established that he suffered any prejudice as a result of counsel's allegedly deficient performance.

For all of these reasons, we conclude that Green failed to prove that he received ineffective assistance of trial counsel.

11

## II. Subpoena

Green also argues that the post-conviction court abused its discretion when it denied his request for a subpoena for his trial counsel.

Indiana Post-Conviction Rule 1(9)(b) provides in pertinent part:

If the pro se petitioner requests issuance of subpoenas for witnesses at an evidentiary hearing, the petitioner shall specifically state by affidavit the reason the witness' testimony is required and the substance of the witness' expected testimony. If the court finds the witness' testimony would be relevant and probative, the court shall order that the subpoena be issued. If the court finds the proposed witness' testimony is not relevant and probative, it shall enter a finding on the record and refuse to issue the subpoena.

The post-conviction court has discretion to determine whether to grant or deny the petitioner's request for a subpoena. Allen v. State, 791 N.E.2d 748, 756 (Ind. Ct. App. 2003), trans. denied. An abuse of discretion occurs when the court's decision is against the logic and effect of the facts and circumstances before the court. Id.

Here, the post-conviction court denied Green's request without entering a finding as required by Rule 1(9)(b). And trial counsel's testimony is certainly relevant to the issue of ineffective assistance of trial counsel. Therefore, the post-conviction court abused its discretion when it denied Green's request to subpoena his trial counsel.

However, the court's error was harmless under the facts and circumstances of this case. See Platt v. State, 168 Ind. App. 55, 59, 341 N.E.2d 219, 222 (1976). First, as we discussed above, Green alleged that trial counsel would not "allow" him to testify at the suppression hearing. Green desired to elicit trial counsel's proposed testimony on this issue in an attempt to prove that counsel was ineffective for failing to argue that Green

did not consent to the vehicle search. However, Green waived this issue because it was not raised in his petitions for post-conviction relief.

Second, Green desired to admit trial counsel's testimony that counsel failed to tell him that the sentencing hearing could not be transcribed and that counsel failed to allow Green to participate in preparing his Statement of the Evidence. Even if we assume that trial counsel would have given the desired testimony, we have already concluded that Green cannot establish any prejudice by counsel's alleged deficient performance.

## Conclusion

Green failed to prove that he was denied the effective assistance of trial counsel. We also conclude that he was not prejudiced by the post-conviction court's refusal to subpoena trial counsel to appear at the post-conviction hearing. Accordingly, we affirm the judgment of the post-conviction court.

Affirmed.

RILEY, J., and CRONE, J., concur.