Stanley BALLENTINE, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 1083 S 374.

Supreme Court of Indiana.

Aug. 2, 1985.

William J. Muha, Daniel G. Hoebeke,
Zandstra & Muha, Highland, for appellant.

Linley E. Pearson, Atty. Gen., John D.
Shuman, Deputy Atty. Gen., Indianapolis,
for appellee.

DeBRULER, Justice.

This is a direct appeal from jury convictions of attempted murder, Ind.Code § 35–42–1–1, Ind.Code § 35–41–5–1, and robbery, Ind.Code § 35–42–5–1. The issue raised is whether the trial court erred in its denial of his motion to dismiss based upon his claim that he was denied his right to a speedy trial.

These are the facts that are relevant to this issue. Appellant was charged by information with the offenses of attempted murder and robbery on October 28, 1980, in the Lake Superior Court. The State learned that appellant was in the custody of the Lafayette County Sheriff's Department in Oxford, Mississippi, and petitioned the court to send a certified copy of the arrest warrant and a motion for detainer to the Sheriff's Office in Mississippi. The detainer and warrant were sent on December 5, 1980. A second detainer was sent on August 25, 1981, to the Mississippi State Penitentiary, when the State learned appellant was being held in that location.

Appellant filed a *pro se* "Demand to be returned for trial" on January 18, 1982. When he was not returned to Indiana for trial within a one-hundred-eighty-day period, he filed a *pro se* motion to dismiss on July 26, 1982. The trial court held two hearings on appellant's motion to dismiss, the first on August 11, 1982, and the second on October 21, 1982. Appellant was represented by counsel at both hearings

but was not returned from Mississippi for either hearing. The court denied appellant's motion to dismiss on October 21, 1982, and set the cause for trial on December 13, 1982. Appellant was returned to Indiana by December 7, 1982, and the jury trial was held on May 31 and June 1 and 2, 1983.

Appellant argues that his right to a speedy trial was violated when the State failed to return him from Mississippi within 180 days after his demand for a speedy trial. He argues that the 180-day limit is an equitable standard to apply in his case because that is the time frame used in the interstate Agreement on Detainers, Ind. Code § 35–33–10–4, as well as in our Rules of Criminal Procedure, R.Crim.Pro. 4(A). However, he acknowledges that since Mississippi is not a party to the interstate Agreement on Detainers, the specific provisions of that law do not directly apply to him. Furthermore, he also acknowledges that this Court has held that the *per se* time limits in our criminal rules regarding speedy trial rights do not apply to persons incarcerated in other states. *Smith v. State* (1977), 267 Ind. 167, 368 N.E.2d 1154.

The issue of what specific time limit protects an appellant's right to a speedy trial when he is incarcerated in another state which is not a party to the interstate Agreement on Detainers is an issue of first impression for this Court. The right to a speedy trial springs from the Sixth Amendment of the United States Constitution and is made applicable to the states through the Fourteenth Amendment. *Klopfer v. North Carolina* (1967), 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1. The United States Supreme Court has found that once an appellant, who is incarcerated in another state, has requested a speedy trial, the state must make a diligent, good-faith effort to return an appellant to its jurisdiction. *Smith v. Hooey* (1969), 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607. But the Court has also clearly stated that there is no constitutional basis for holding that the right to a speedy trial can be quantified into a specified number of days or months,

*Barker v. Wingo* (1972), 407 U.S. 514, 523, 92 S.Ct. 2182, 2188, 33 L.Ed.2d 101, 113, and that the proper approach is a balancing test in which the conduct of both the prosecution and the appellant are weighed. Four of the factors which should be assessed in determining whether a particular defendant has been deprived of his right are: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.

This Court discussed the United States Supreme Court's decision in *Smith v. Hooey* and found that the fact an appellant is in jail on a prior conviction, "whether he be in jail in Indiana or another jurisdiction, does not vitiate his interest in a speedy trial on the second charge.... there is now a constitutional obligation imposed upon the states to make, upon demand of an incarcerated defendant, a diligent, good-faith effort to bring him to trial." *Fossey v. State* (1970), 254 Ind. 173, 180, 258 N.E.2d 616, 620. We also explained that in determining whether such an effort has been made, we will look at all the facts and circumstances in the case.

In this case, appellant has not shown that any specific statutory quantity of time applies to him, and he cannot claim that he is unfairly denied protection of his constitutional right on that basis since the United States Supreme Court has specifically stated the right to a speedy trial cannot be measured by a specific quantity of time. Therefore, we utilize the test set out in *Barker*, keeping in mind the admonition of the Supreme Court that none of the four factors alone is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Barker v. Wingo*, 407 U.S. at 533, 42 S.Ct. at 2190, 33 L.Ed.2d at 118.

In regard to the length of delay, the time elapsed between the point at which the State first learned of appellant's pres-

ence in custody in Mississippi and caused the detainers to be forwarded, and the point at which the trial took place was about two and one-half years. On its face, and without considering other factors, such a delay is unusually long, and weighs a small, but appreciable amount against the State. It is more than enough to trigger an inquiry as to whether a constitutional violation occurred.

In regard to the reason for delay, the first fifteen months saw appellant resting in silence, and he has not shown as would be simple for him to do, when he first gained knowledge of the existence of the detainers. The State, on the other hand, has shown that it forwarded some follow-up letters to the keeper of the records at the Mississippi Department of Corrections in the fall of 1981 and learned that it had been operating under the mistaken belief that Mississippi was a party to the inter-state Agreement on Detainers. Confusion in the prosecutor's office over the proper procedure continued through a change of personnel during the spring of 1982. Appellant filed his demand for trial in January of 1982. The period after the demand saw contact of the prosecutor's office with the governor's office to develop the requisites for a distinct agreement between the two governors of the states as to appellant's return to Indiana for trial. There was some confusion, perhaps negligence, but no attempt to purposely delay trial. The seven months at the end of the period of delay saw appellant agreeing to the trial being continued. We judge that the aggregate of reasons for the delay as a whole weighs slightly in favor of the State.

In regard to the third factor, appellant did clearly assert his right by filing the demand to be returned for trial and specifically waived extradition. However, as the trial court pointed out, this action appeared to be calculated toward the possibility of getting the cause dismissed rather than toward the actual possibility of having an immediate trial. Appellant filed his motion to dismiss just eight days after the 180-day period had expired; he did not renew his demand for a speedy trial at any time; and

he agreed to later continuances of seven months. Appellant should receive a positive credit under this factor.

Finally, with regard to the fourth factor, there is little basis upon which to conclude that appellant suffered any prejudice at all from the delay. There is no claim that any witnesses necessary for the defense were lost because of the delay or that there was any lapse of memory by any witness which prejudiced the defense. Concern about how the passage of time would prejudice the defense was minimal after the trial was originally set for December 13. The trial finally started on May 31 and was concluded in a mere two days.

The type of prejudice which appellant did allege in his Motion to Dismiss concerned his treatment during his imprisonment in Mississippi. He alleged that the:

"(a) Mississippi Department of Corrections inmates who have detainers lodged against them have reduced chances of being elevated to trusty status, and thus may lose opportunities to earn additional good-time or earned-time sentence reductions;

"(b) Such inmates may not participate in the work-release program;

"Furthermore, if affiant is held without trial on said detainer until his current sentence is completed, he will lose forever the chance that a sentence arising out of the detainer charge can be made to run concurrently with his present sentence.

"The detainer, being unresolved, is a source of great anxiety to your affiant, causing him unrest and inability to plan for his future."

The trial court pointed out that these general allegations did not show specific prejudice to appellant. Since appellant was serving a seven and one-half year term for armed robbery, he did not show that he specifically would have been eligible for any of the special programs even without the detainer filed against him. Appellant argues that he could not demonstrate his actual prejudice because he was not

present at either of the two hearings held on his Motion to Dismiss. The force of this contention is diminished in the light of the fact that appellant was represented by counsel at those hearings and had further opportunity after returning to Indiana to buttress his positions. The record before us supports the conclusion that appellant suffered no prejudice as a result of the delay in trial.

The task of balancing these factors is not without difficulty. The State did move the case haltingly, with confusion and some negligence throughout the delay, but during the first part of that delay without prodding, toward a trial. There was no intent of the State to deliberately delay the trial for some benefit, and the delay occasioned little if any prejudice to the defense.

After a consideration of all the facts and circumstances of this case, and balancing the four factors of *Barker*, we find that appellant was not denied his constitutional right to a speedy trial.

The conviction is affirmed.

GIVAN, C.J., and PRENTICE and PIVARNIK, JJ., concur.

HUNTER, J., not participating.